# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Edney Distributing Company, Inc., | Civil No. 10-4929 (DWF/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Buhler Trading, Inc., and Buhler Industries, Inc., | |
| Defendants. | |

_____

Brian J. Donahoe, Esq., and Nichole Mohning Roths, Esq., Cutler & Donahoe, LLP, counsel for Plaintiff.

David M. Wilk, Esq., John M. Bjorkman, Esq., and Melissa M. Weldon, Esq., Larson King LLP, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on Defendants' Motion Regarding Governing Law (Doc. No. 29) and Plaintiff's Motion for an Order on the Determination of Governing Law (Doc. No. 38). For the reasons set forth below, the Court concludes that South Dakota law governs the distributorship agreement at issue in this case.

## BACKGROUND

Edney Distributing Company, Inc. ("Edney") is a wholesale distributor of farm and ranch equipment. (Doc. No. 1, Ex. 3 ("Edney Aff. I") ¶ 1.) Edney is organized under the laws of South Dakota (*id.* ¶ 2) and maintains its corporate headquarters in

Huron, South Dakota (Doc. No. 71, Wilk Aff. ¶¶ 6-7, Exs. E & F). Buhler Trading, Inc. and Buhler Industries, Inc. (collectively, "Buhler") are Canadian companies headquartered in Winnipeg, Manitoba. (Doc. No. 9, Morgan Decl. ¶¶ 3-4.) At some time in the 1970s, Edney and a Buhler entity entered into a distributorship agreement.[1] (Doc. No. 16 ("Edney Aff. II") ¶ 5; Doc. No. 78, Wilk Supp. Aff. ¶ 2, Ex. I ("Edney Dep. II") at 24-25.) Edney's president, William Douglas Edney, has conceded that, at the time it entered into the distributorship agreement, Edney conducted business solely in South Dakota and North Dakota.[2] (Wilk Aff. ¶ 2, Ex. A ("Edney Dep. I") at 85.) There appears to be no dispute that the distributorship agreement was entered into in South Dakota or Manitoba.[3] (*See* Doc. No. 36, Buhler Decl. ¶ 5 ("Anything related to Edney and Buhler's business relationship during my tenure as CEO always occurred between South Dakota and Canada."); Morgan Decl. ¶ 11 ("Historically, business between Buhler and Edney has been conducted between Winnipeg, Manitoba and Huron, South Dakota.").)

---

[1] Edney claims that it "has been granted the right to be the exclusive distributor" for Buhler products sold under the Farm King and Allied labels in Minnesota, South Dakota, North Dakota, and Wisconsin. (Edney Aff. I ¶ 6.) Buhler denies that the distributorship agreement was exclusive. (Doc. No. 36, Buhler Decl. ¶ 4.)

[2] It is undisputed that Edney did not do business in Minnesota or Wisconsin at the time it entered into the alleged distribution agreement. (Edney Dep. II at 84-85.) Edney later expanded its business operations into Minnesota and Wisconsin. (Edney Dep. I at 89.)

[3] Edney offers neither evidence nor argument to dispute Buhler's contention that the original distributorship agreement was entered into in South Dakota or Manitoba.

Edney maintains that the distributorship agreement was entered into pursuant to both "written and oral agreements" (Edney Aff. I ¶ 6) and that the agreement has been modified by the parties over time. At his deposition, however, Edney's president acknowledged that the distributorship agreement was not in writing. (Edney Dep. II at 22, 258.) No written distributorship agreement is part of the record before the Court. Edney further acknowledges that the agreement could be terminated by either party.[4] (Edney Dep. I at 96-97, 110, 111.) In November 2010, Buhler delivered a letter to Edney in Lakeville, Minnesota, notifying Edney that Buhler intended to terminate the distributorship agreement effective December 20, 2010. (Doc. No. 76, Donahoe Aff. ¶¶ 3-4, Ex. 2 ("Morgan Dep.") at 91, Ex. 3.)

Plaintiff asserts the following six claims against Defendants: (1) "Violation of the Minnesota Agricultural Equipment Dealership Act"; (2) "Breach of Contract—Distribution Agreement"; (3) "Breach [of] Implied Duty of Good Faith and Fair Dealing"; (4) "Interference With Contractual Relationships"; (5) "Relief Under State Laws of SD, ND, and WI"; and (6) "Declaratory Judgment." (Doc. No. 66, Ver. Am. Compl.)

---

[4] Edney maintains that there was no specific term of duration for the distributorship agreement.

## DISCUSSION

I.    **Legal Standard**

In a case over which a federal court has diversity jurisdiction, the court applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Highwoods Props., Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005). Before conducting a choice of law analysis, however, the court must determine if a conflict exists. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). A conflict exists if the rule of a particular state is outcome determinative. *Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 997 (D. Minn. 2004). The court must also consider whether the law of each state may be constitutionally applied. *Id.* at 997, citing *Jepson v. Gen. Cas. Co. of Wi.*, 513 N.W.2d 467, 469 (Minn. 1994). "For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 590 N.W.2d 670, 672 (Minn. Ct. App. 1999).

If the court determines that a conflict exists and that the law of each state may be constitutionally applied, the court applies the forum state's choice of law analysis. Under Minnesota's choice of law analysis, the court must first determine whether the law in question is substantive or procedural. If the issue before the court is substantive, the court applies a "multi-step choice-of-law analysis, which includes application of five

4

choice-influencing considerations, to determine which state's law applies." *Jepson*, 513 N.W.2d at 469. Such considerations include: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.* at 470.

## II. Choice of Law

The Court has diversity jurisdiction over this case, and thus applies Minnesota's choice of law principles. The Court concludes that a conflict exists among the dealership statutes of South Dakota, Minnesota, North Dakota, and Wisconsin and the protections afforded to dealers thereunder.

Defendants argue that the laws of Minnesota, North Dakota, and Wisconsin cannot be constitutionally applied to this case. The Court declines to reach the question of the constitutionality of the application of each state's law at this time. For present purposes, the Court assumes, without deciding, that the laws of each of the relevant states may be constitutionally applied.[5] The Court's decision here turns instead upon its evaluation of the five choice-influencing considerations.

---

[5] It is clear to the Court that South Dakota has substantial contacts with this case as the agreement at issue was likely negotiated and entered into, at least in part, in South Dakota, and Edney is (and was) organized under the laws of South Dakota and maintains its corporate headquarters in the state. (Edney Aff. I ¶ 2; Wilk Aff. ¶¶ 6-7, Exs. E & F.) It is also likely that Edney's sale of Buhler products in North Dakota, Minnesota, and Wisconsin is sufficient to establish constitutionally significant contacts to create state interests for each of those states. Edney also alleges that Edney "maintains facilities and personnel, and pays taxes" in each of the states and that Buhler, "through

(Footnote Continued on Next Page)

The Court concludes, as a preliminary matter, that the issue before the Court is substantive, and not procedural, in nature. The Court further considers the following factors: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; and (4) advancement of the forum's governmental interest, and concludes that such factors warrant the application of South Dakota law to the distribution agreement at issue. *See Jepson*, 513 N.W.2d at 470. Because the balance of the first four factors weighs in favor of applying South Dakota law, the Court need not make a determination as to which of the states has the better rule of law in this regard. *See id.*

The first factor "acts to preserve the parties' justified contractual expectations." *Mid-Continent Eng'g, Inc. v. Toyoda Mach. USA, Corp.*, 676 F. Supp. 2d 823, 831 (D. Minn. 2009), quoting *Nodak*, 604 N.W.2d at 94. There appears to be no dispute that the original distributorship agreement was entered into in South Dakota and/or Manitoba.

---

(Footnote Continued From Previous Page)

wholly owned subsidiaries, own[s] and operate[s] manufacturing facilities in North Dakota, South Dakota and Minnesota" (Doc. No. 75 at 7), however, no evidence of such contacts has been submitted to the Court with respect to this motion. On the record currently before it, the Court is unable to evaluate the relative significance of the contacts and interests of each of the other states with respect to the distributorship agreement at issue between the parties. Still, for purposes of the present motion, the Court assumes that the laws of each of South Dakota, North Dakota, Minnesota, and Wisconsin may be constitutionally applied. The Court notes, however, that at the time the distributorship agreement was entered into, it appears that only South Dakota and North Dakota had any contacts whatsoever with either Edney or Buhler. (Edney Dep. I at 85.)

(*See* Buhler Decl. ¶ 5; Morgan Decl. ¶ 11.) Moreover, Edney's president has conceded that, at the time Edney entered into the distributorship agreement with a Buhler entity sometime in the 1970s, Edney conducted business solely in South Dakota and North Dakota. (Edney Dep. I at 85.) At the time the agreement was formed, Edney did not do business in either Minnesota or Wisconsin. (Edney Dep. II at 84-85.) Thus, it would not have been foreseeable to the parties, at that time, that the law of either of those states would apply.

Given that Edney is, and always has been, a South Dakota corporation headquartered in South Dakota, and that the distributorship agreement between the parties was negotiated and entered into between South Dakota and Canada, at the time of formation, the parties would likely have expected the laws of South Dakota (if not Manitoba) to govern their relationship. *See In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000) (applying the laws of the states in which the contract was formed to a dispute arising from a contract that governed the parties' relationship in multiple states); *McCulloch v. Canadian Pac. Ry. Co.*, 53 F. Supp. 534, 540 (D. Minn. 1943) (determining that the performance of a contract is governed by the laws of the State in which it is to be performed and that "the existence of a contract is governed by the laws of the State in which it was made"). Thus, the predictability of results factor favors the application of South Dakota law to this dispute.[6]

---

[6] With respect to both the first and second factors, the Court further recognizes the principle that "the same facts, regardless of where the litigation occurs, should be decided
(Footnote Continued on Next Page)

7

To examine the second factor, the Court "looks at the contacts the state has with the issues being litigated, and the risk of encouraging forum shopping by applying that state's law." *Mid-Continent*, 676 F. Supp. 2d at 832, quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1394 (8th Cir.1997).  As noted above, South Dakota's contacts with the distributorship agreement at issue are far more substantial than those of North Dakota, Minnesota, or Wisconsin, given that the agreement was negotiated and entered into partly, if not wholly, in that state.  Moreover, applying Minnesota's potentially more favorable dealership statute to an agreement entered into before the parties ever did business in the state would increase the risk of encouraging forum shopping.  The maintenance of interstate and international order thus favors the application of South Dakota law to this dispute, which arises from the agreement.

The third factor, simplification of the judicial task, is "primarily concerned with the clarity of the conflicting laws." *Nodak,* 604 N.W.2d at 95.  Because the laws of South Dakota, North Dakota, Minnesota, and Wisconsin are all clear and easily applied, this factor is not significant in this case.  *See Mid-Continent*, 676 F. Supp. 2d at 832; *Jepson*, 513 N.W.2d at 472 (giving the third factor no weight when the law of either state could be applied without difficulty).

---

(Footnote Continued From Previous Page)

the same to avoid forum shopping," *Nodak*, 604 N.W.2d at 94, and notes that Edney likely chose to initiate this action in Minnesota in order to take advantage of Minnesota's more favorable dealership statute.

The fourth factor is "which choice of law most advances a significant interest of the forum." *See Mid-Continent*, 676 F. Supp. 2d at 832, quoting *Jepson*, 513 N.W.2d at 472. A plaintiff may more easily establish a claim for a violation of the Minnesota Agricultural Equipment Dealership Act than under the dealership statutes of other states, especially in light of the lack of an explicit requirement that the contract be in writing. Still, such protections are not without limitation. The Court notes that this factor may, but only slightly, favor the application of Minnesota's dealership statute and the potentially broader protections afforded thereunder.

Minnesota courts only apply the fifth factor when the first four factors do not resolve the choice of law question. *Mid-Continent*, 676 F. Supp. 2d at 832, citing *Medtronic Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 455-56 (Minn. Ct. App. 2001); *see Nodak,* 604 N.W.2d at 96. Here, the first four factors resolve the choice of law issue. Therefore, the Court will not consider which state has the better rule of law.

Applying Minnesota's choice of law principles, the Court finds that South Dakota law governs the distributorship agreement between the parties. Consequently, Edney's claim under the Minnesota Agricultural Equipment Dealership Act is rightfully dismissed.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion Regarding Governing Law (Doc. No. [29]) is **GRANTED** as follows:

      a.      The Court holds that South Dakota Law governs the distributorship agreement at issue in this case.

      b.      Count I of the Verified Amended Complaint (Violation of the Minnesota Agricultural Equipment Dealership Act) (Doc. No. [66]) is **DISMISSED WITH PREJUDICE**.

    2.    Plaintiff's Motion for an Order on the Determination of Governing Law (Doc. No. [38]) is **DENIED AS MOOT**.

Dated: March 2, 2012                       s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge